**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES DEPARTMENT OF TREASURY<br>　　Petitioner,<br><br>　　　　v.<br><br>PENSION BENEFIT GUARANTY CORPORATION,<br>　　Interested Party,<br><br>　　　　v.<br><br>DENNIS BLACK, *et al.*,<br>　　Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:12-mc-00100-EGS |

**RESPONDENTS' SURREPLY IN OPPOSITION TO THE
TREASURY'S RENEWED MOTION TO QUASH**

Anthony F. Shelley (D.C. Bar No. 420043)
Timothy P. O'Toole (D.C. Bar No. 469800)
Michael N. Khalil (D.C. Bar No. 497566)
MILLER & CHEVALIER CHARTERED
655 15th St. NW, Suite 900
Washington, DC  20005
Telephone:  202-626-5800
Facsimile:  202-626-5801
E-mail:  ashelley@milchev.com
　　　　totoole@milchev.com
　　　　mkhalil@milchev.com

*Attorneys for Respondents*

In response to the Court's order of January 29, 2014, permitting Respondents to file a surreply for the limited purpose of addressing new arguments raised by the U.S. Department of the Treasury (the "Treasury") in its reply brief (ECF No. 21), Respondents respectfully submit this surreply. Respondents here address three arguments raised in the Treasury's reply, two arising out of statements contained in a 2009 objection submitted in the Delphi bankruptcy court (the "Objection" submitted as Pet'r's Ex. 2D to its Reply, ECF NO. 21-2), and one involving a new argument about the relief available to Respondents under ERISA.[1]

First, on page 7 of its reply brief, the Treasury asks the Court to disregard the 85.62% funding level described in Watson Wyatt's June 30, 2009 AFTAP certification of the Delphi Retirement Program for Salaried Employees (the "Salaried Plan") because the estimate is inconsistent with a statement in the bankruptcy court Objection that described the Salaried Plan as being underfunded by "approximately $ 2 billion."[2] The Treasury implies that this earlier statement by the Objectors, which was made prior to any discovery (or even the initiation of the underlying lawsuit), should now be binding on the Plaintiffs in the underlying litigation (the "*Black* Plaintiffs"). As described below, the Treasury's argument completely ignores the context and history of the bankruptcy Objection and helps illustrate the necessity for discovery in this litigation.

As part of the Pension Protection Act of 2006, Congress created a new standard, the Adjusted Funding Target Attainment Percentage ("AFTAP") to measure the pension funding levels for all defined benefit pension plans. The AFTAP is the ratio of each plan's actuarial

---

[1] The bankruptcy court Objection was filed on behalf of some of plaintiffs in the underlying litigation who are consequently some of the Respondents to the Treasury's motion to quash (the "Objectors").

[2] The "AFTAP Certification" is attached to Respondents' Opposition brief at ECF No.19-5.

value of assets to the plan's liabilities or the present value of benefits. On June 30, 2009, Watson Wyatt, which served as the actuary for Delphi's pension plans, finalized its AFTAP certification for the Salaried Plan for the current plan year (which began on October 1, 2008). The AFTAP Certification estimated that the Plan was funded at 85.62%, with $3.497 billion in liabilities as of October 1, 2008. AFTAP Certification at ECF Page 4. On July 1, 2009 the PBGC requested that Watson Wyatt provide it with a copy of the 2009 AFTAP Certification for the Salaried Plan, which Watson Wyatt forwarded to the PBGC on July 13, 2009. *See* Ex. G, attached hereto.

Despite the fact that this AFTAP certification represented the most recent actuarial funding calculation performed on the Salaried Plan in the PBGC's possession, and that PBGC actuaries requested and reviewed the document while they were making their determinations about whether to initiate termination proceedings, the PBGC did not include this document in its administrative record. Indeed, the *Black* Plaintiffs did not become aware of the possible existence of the AFTAP certification until early 2010. On March 8, 2010, the *Black* Plaintiffs wrote to the PBGC, stating their belief that in June or early July 2009 Watson Wyatt had presented an actuarial report to the PBGC regarding the Salaried Plan's funding levels and asked the PBGC to provide a copy of the report. Ex. H, attached hereto. By letter dated March 22, 2010, the PBGC denied the existence of any such report. Ex. I, attached hereto. Respondents subsequently obtained a copy of the AFTAP directly from Watson Wyatt, and later discovery from the PBGC showed that the PBGC did indeed have copies in its records. The PBGC has never provided a satisfactory explanation for its refusal to disclose the AFTAP, either in the administrative record, or in response to counsel's specific requests.

Nonetheless, the Treasury asks this Court to disregard the information contained in the Congressionally-mandated AFTAP Certification because that information is inconsistent with

the Treasury's narrative, *i.e.*, that the Salaried Plan "needed" to be terminated.  The irony of the Treasury's argument is that it seeks to penalize the *Black* Plaintiffs for an earlier statement by some of them that was based on a misrepresentation by the PBGC, and does so in an effort to have the Court overlook plainly relevant information obtained through discovery in order to justify denying any discovery from the Treasury.[3]

The second new argument raised by Treasury goes to its so-called redressability argument on standing.  In their opposition to the Treasury's motion to quash, Respondents note that: (1) Congress has expressly authorized plan participants to bring an action for "appropriate equitable relief" against the PBGC, 29 U.S.C. § 1303(f)(1); and (2) that equitable relief is a particularly flexible form of relief that can include, *inter alia*, monetary relief to make an injured party whole.  *See* ECF No. 19 at 40-41 (citing *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011); *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944); *Carter-Jones Lumber Co. v. Dixie Distrib. Co.*, 166 F.3d 840, 846 (6th Cir. 1999)).  Ignoring *Hecht* and *Carter-Jones*, the Treasury argues that this Court should disregard Judge Tarnow's redressability ruling and find that the *Black* Plaintiffs lack a remedy because *Amara* arose under 29 US.C. § 1132(a)(3) (which falls under Title I of ERISA) as opposed to 29 U.S.C. § 1303(f)(1) (which falls under Title IV of ERISA).  This distinction is immaterial.

---

[3] The Treasury's other arguments on this point are similarly superficial.  As an initial matter, while true that Delphi had stopped making contributions to the Salaried Plan by 2008, it is also true that the Plan had been "frozen" as of that time, meaning that no new liabilities were accruing.  Similarly, the Treasury's speculation that the funding discrepancy between the AFTAP and the PBGC's funding estimates can be attributed to the drop in the market value of plan assets would only be relevant to the asset side of the funding ratio; the Treasury offers no explanation for the $1.7 liability discrepancy.  Nor does the Treasury offer any argument as to why a court would use the termination basis liability figures of the PBGC over the congressionally-mandated ongoing assumptions of the AFTAP in making a determination about whether the Salaried Plan could be maintained on an ongoing basis.  In sum, the Treasury's arguments regarding the AFTAP Certification are unavailing.

While true that *Amara* occurred in the context of an action under § 1132(a)(3), the Treasury ignores that in both § 1132(a)(3) and § 1303(f), Congress authorized the exact same relief (*i.e.*, "appropriate equitable relief"); thus, it should be assumed that Congress meant to authorize the same relief in both sections. *See Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860 (U.S. 1986) ("The normal rule of statutory construction assumes that ''identical words used in different parts of the same act are intended to have the same meaning.''") (quoting *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934) (quoting *Atl. Cleaners & Dryers, Inc. v. United States*, 286 U.S. 427, 433 (1932)). A remedy will be considered appropriate equitable relief where it was typically available in equity, which includes, *inter alia*, various forms of restitution and make-whole relief, regardless of whether the relief includes a monetary component. *See, e.g., Amara*, 131 S. Ct. at 1879-80; *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361-65 (2006); *Rochow v. Life Ins. Co. of N. Am.*, 737 F.3d 415, 426 (6th Cir. 2013); *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The *Black* Plaintiffs' argument all along has been that, if they succeed in showing that the PBGC unlawfully terminated the Salaried Plan, they are entitled to an order requiring the PBGC equitably to operate the Salaried Plan as if it had not been terminated or, more generally, a constructive trust over the Salaried Plan assets obtained by the PBGC upon termination (and subsequent earnings on those assets) – relief that is (as Judge Tarnow has held) entirely consistent with the case law delineating equitable remedies under ERISA.

Finally, on page 13 of its reply, the Treasury argues that this Court should disregard Judge Tarnow's September 1, 2011 Order because, in the bankruptcy court Objection, the Objectors noted the Second Circuit's holding in *In re Jones & Laughlin Hourly Pension Plan v. LTV Corp.*, 824 F.2d 197 (2d Cir. 1987), and stated that, if *Jones & Laughlin* were to govern, the

PBGC may terminate a plan under § 1342(c) outside of a formal district court adjudication.  The Treasury asks this Court to treat the statements in the Objection as a concession by the *Black* Plaintiffs as to the propriety of the Salaried Plan's termination.  The argument defies common sense.

In the first place, the point of the bankruptcy court Objection was to note the Objectors' belief that any termination of the Salaried Plan by the PBGC pursuant to an agreement with Delphi would be *invalid*, and to put both the court and the other parties to the bankruptcy proceeding on notice that the Salaried Plan's termination was not assured, notwithstanding the imminence of such an agreement, as any agreement could not be effective if made by a conflicted fiduciary.  *See, e.g.*, Objection at 2 (noting that the termination of the Salaried Plan was "neither assured nor imminent.").  Moreover, both the PBGC and the Treasury were active participants in the Delphi Bankruptcy who would have had notice of the Objection at the time it was filed nearly five years ago.  While the *Black* Plaintiffs later included an additional legal claim in their complaint as to why the PBGC's termination of the Salaried Plan by agreement must fail (*i.e.*, that it was far from clear that either ERISA would allow for a summary termination in any instance), neither the PBGC nor the Treasury could have possibly been prejudiced by this claim.  Additionally, the *Black* Plaintiffs provided the bankruptcy court with a copy of their draft complaint (the one later filed with Judge Tarnow) in order to ensure that the bankruptcy court had no misgivings about any of the complaint's claims for relief.  The bankruptcy court gave its approval to the initiation of the complaint on September 11, 2009.  *See* Stipulation Concerning the Automatic Stay in Connection with the Commencement of An Action Against the Pension Benefit Guaranty Corporation, *In re DPH Holdings Corp.*, ECF No. 18896, Case No. 05-44481 (S.D.N.Y., filed Sept. 11,2 011),.  As to the Treasury's suggestion that the

- 6 -

*Black* Plaintiffs somehow kept the Michigan Court in the dark about the PBGC's termination-by-agreement practices, Respondents note that one of the *Black* Plaintiffs' first briefs in the case included a detailed discussion of *Jones & Laughlin* (the authority that Treasury suggests has been hidden from the Michigan Court) along with argument as to why the Michigan Court should not feel bound to follow the Second Circuit's precedent.  *See Black v. PBGC*, Dkt. No. 7-2 at 12-13.

## **CONCLUSION**

The Treasury's motion to quash should be denied.

Dated:  February 10, 2014                    Respectfully submitted,

 /s/ Anthony F. Shelley
Anthony F. Shelley (D.C. Bar No. 420043)
Timothy P. O'Toole (D.C. Bar No. 469800)
Michael N. Khalil (D.C. Bar No. 497566)
MILLER & CHEVALIER CHARTERED
655 15th St. NW, Suite 900
Washington, DC  20005
Telephone:  202-626-5800
Facsimile:  202-626-5801
E-mail:  ashelley@milchev.com
            totoole@milchev.com
            mkhalil@milchev.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 10, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

David M. Glass
U.S. Dep't of Justice - Civil Division
20 Massachusetts Avenue, NW
Washington, DC 20530
Email: david.glass@usdoj.gov

John A. Menke
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 K Street, NW
Washington, DC 20005-4026
Email: menke.john@pbgc.gov

                                                /s/ Anthony F. Shelley