**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
U.S. DEPARTMENT OF THE          )
TREASURY,                       )
                                )
           Petitioner,          )
                                )
     v.                         )   Case No. 12-mc-100 (EGS)
                                )
PENSION BENEFIT GUARANTY        )
CORPORATION,                    )
                                )
           Interested Party,    )
                                )
     v.                         )
                                )
DENNIS BLACK, _et al._,         )
                                )
           Respondents.         )
_____)


<u>**MEMORANDUM OPINION**</u>


        Pending before the Court is Dennis Black, Charles
Cunningham, Ken Hollis, and the Delphi Salaried Retirees
Association's (collectively, "Respondents") motion to compel the
production, or alternatively _in camera_ review, of documents
withheld and redacted by the U.S. Department of Treasury (the
"Treasury") for privilege. Upon consideration of the motion,
response and reply thereto, the relevant caselaw, and the entire
record, and for the reasons set forth below, the motion is
**GRANTED in part.**


1

## I.   BACKGROUND

Respondents in this miscellaneous action are plaintiffs in *Black v. PBGC*, Case No. 09-13616, a civil action pending in the United States District Court for the Eastern District of Michigan.  Respondents are current and former salaried workers at Delphi Corporation ("Delphi"), an automotive supply company. In the civil action, Respondents allege that in July 2009, the Pension Benefit Guaranty Corporation ("PBGC") improperly terminated Delphi's pension plan for its salaried workers ("Plan") via an agreement with Delphi and General Motors. Treasury is not a party to the civil action.

On July 9, 2015, Respondents filed a motion to compel the production, or alternatively *in camera* review, of the documents Treasury withheld or redacted under four separate claims of privilege: (1) the deliberative process privilege; (2) the presidential communications privilege; (3) the attorney-client privilege; and (4) the work product doctrine. *See generally* Mot. Compel, ECF No. 30. Although Treasury asserted a privilege over 1,273 documents, Respondents only challenged 866 documents. Opp., ECF No. 35 at 1.

In order to better evaluate Treasury's claims of privilege, the Court ordered an *in camera* review of a random selection of the withheld and redacted documents. Minute Entry of June 17, 2016. The Court directed Treasury to submit hard copies of every

tenth document listed in its privilege log and to clearly identify the redacted material. *Id*.

Upon review of the random sampling of documents that Treasury submitted, the Court concluded that it lacked sufficient information to rule on many of Treasury's privilege claims and ordered that Treasury submit *all* of the documents at issue for *in camera* inspection. Minute Entry of July 15, 2016. As part of this exercise, the Court ordered Treasury to submit an *ex parte* submission clearly articulating why each document, or document portion, was protected by the privilege asserted. *Id*. For documents over which Treasury claimed the deliberative process privilege, the Court specifically directed Treasury to inform the Court "what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Id*. The Court warned that "should [it] determine that [Treasury's] claims of privilege are frivolous, the Court shall impose significant sanctions, mo[ne]tary and otherwise." *Id*.

On July 25, 2016, Treasury produced, *in camera*, hard copies of the contested documents, noting that "[i]n preparing its production, Treasury decided not to continue withholding certain documents." *See* Notice of Production, ECF No. 40. Of the original 866 contested documents, Treasury revoked its claims of privilege over nearly 640 documents in light of the Court's order to produce the contested documents *in camera*. Treasury

3

provided no explanation as to why it suddenly withdrew its privilege assertions over nearly 75% of the documents it had previously claimed were privileged. *Id.* The 221 documents over which Treasury continues to assert a claim of privilege are now at issue before the Court.

## II.  THE DELIBERATIVE PROCESS PRIVILEGE

Treasury has raised the deliberative process privilege as the sole basis for withholding 120 documents from production. For 63 documents, Treasury has asserted the deliberative process privilege in conjunction with another privilege.[1] According to Treasury, these 183 communications are protected from disclosure because they involve government deliberations regarding the 2009 bankruptcy and restructuring of Chrysler and General Motors. *See* Opp., ECF No. 35 at 11-12. For the following reasons, the Court will order the production of all of the documents over which Treasury has asserted the deliberative process privilege in isolation.

### a. The Legal Standard.

The deliberative process privilege serves to preserve the "open and frank discussion" necessary for effective agency decisionmaking by protecting from disclosure "documents reflecting advisory opinions, recommendations, and deliberations

---

[1] Because Treasury has not provided a revised privilege log reflecting only the 222 contested entries, the Court derives these figures from the cover pages to Treasury's July 25, 2016 *in camera* production.

that are part of a process by which Government decisions and policies are formulated." *Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8-9 (2001). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (quoting *Klamath Water*, 532 U.S. at 8-9.). As the U.S. Court of Appeals for the D.C. Circuit has noted, agency officials "should be judged by what they decided, not for matters they considered before making up their minds." *Russell v. Dep't Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

To fall within the scope of the deliberative-process privilege, withheld materials must be both "predecisional" and "deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). A communication is predecisional if "it was generated before the adoption of an agency policy" and deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "Even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted formally or informally, as the agency position on an issue[.]" *Id*. The deliberative process privilege is to be construed "as narrowly as consistent with

efficient Government operation." *United States v. Phillip Morris*, 218 F.R.D. 312, 315 (D.D.C. 2003) (quoting *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 667 (D.C. Cir. 1981)). To properly invoke the privilege, the agency must "make a detailed argument...in support of the privilege" because "without a specific articulation of the rationale supporting the privilege, a court cannot rule on whether the privilege applies." *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 1, 4 (D.D.C. 2010) (internal quotation marks omitted).

   **b. Treasury Has Not Properly Invoked the Deliberative Process Privilege.**

Respondents contend that they are entitled to the documents that Treasury has withheld under the deliberative process privilege because: (1) the material does not fall within the scope of the privilege; (2) the privilege has been waived; (3) Respondents' need for the material overcomes the privilege; and (4) Treasury's alleged misconduct nullifies the privilege. *See* Mot. Compel, ECF No. 30 at 6-18. As a threshold matter, the Court need not analyze Respondents' myriad arguments as to why the deliberative process privilege should not apply because Treasury has failed to comply with its basic obligation to provide the Court with "a specific articulation of the rationale supporting the privilege" to enable the Court to assess the

appropriateness of the privilege. *See Ascom Hasler*, 267 F.R.D. at 4; *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000).

A "common practice of agencies seeking to invoke the deliberative process privilege is to establish the privilege through a combination of privilege logs, which identify specific documents, and declarations from agency officials explaining what the documents are and how they relate to the agency decision." *Ascom Hasler*, 267 F.R.D. at 4 (citing *N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 308 (D.D.C. 2009)). The Court finds both Treasury's privilege log and accompanying declaration to be woefully inadequate.

First, for the Treasury's assertions to be adequate, the Court "must be able to determine, from the privilege log, that the documents withheld are (1) predecisional; (2) deliberative; (3) do not 'memorialize or evidence' the agency's final policy; (4) were not shared with the public; and (5) cannot be produced in a redacted form." *Id*. Treasury's privilege log does not enable the Court to assess at least three of these factors. For context, Treasury's log provides fields for the documents' date, type, author, and recipients. *See generally* Treasury Privilege Log, ECF No. 35-5. The log also provides a brief description of each document, lists the privilege asserted, and indicates whether the document was redacted or entirely withheld from production. Noticeably absent from the entries in which Treasury

7

asserts the deliberative process privilege, however, is any indication that the documents do not "memorialize or evidence the agency's final policy" and "were not shared with the public." *Ascom Hasler*, 267 F.R.D. at 4. Further, the purported predecisional nature of each entry cannot readily be discerned from the privilege log. Treasury states that these communications were sent before the implementation of the auto-restructuring policies, *see* Opp., ECF No. 35 at 12–13, but the mere fact that a communication is dated prior to the agency's adoption of a policy is insufficient to establish that it is predecisional. Rather, the party invoking the privilege must also demonstrate that the content was not later adopted. *See Coastal States*, 617 F.2d at 866 (reasoning that a document that "is predecisional at the time it is prepared...can lose that status if it is adopted formally or informally, as the agency position on an issue[.]"). Although Treasury has designated on the privilege log which documents are drafts, the fact that a document is in draft form does not automatically cloak it with the deliberative process privilege. "[D]rafts are not presumptively privileged, and the designation of documents as 'drafts' does not end the inquiry into whether a document is predecisional." *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 260 (D.D.C. 2004) (internal quotation marks omitted). Treasury has not shown that these drafts do not

reflect final agency policy. For these reasons, the Court finds Treasury's privilege log inadequate in so far as it relates to the assertion of the deliberative process privilege.

Moreover, Treasury's declaration from Lorenzo Rasetti, the Chief Financial Officer at Treasury's Office of Financial Stability, does not change the result. To be adequate, an agency declaration supporting a deliberative process privilege claim must contain:

> 1) a formal claim of privilege by the head of the department having control over the requested information;
> 2) assertion of the privilege based on actual personal consideration by that official; and
> 3) a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege.

*Landry*, 204 F.3d at 1135 (internal quotation marks omitted). The Court does not question whether Mr. Rasetti is of sufficient rank to assert the privilege ——*see id.* (reasoning that it "would be counterproductive to read 'head of the department' in the narrowest possible way")—— and recognizes that Mr. Rasetti's statement is based on his "personal review of each of the entries on the Privilege Log and a review of a sampling of the documents described on the [log]." Rasetti Decl., ECF No. 35-1 at 4. The Court, however, finds that Treasury has failed to present "a detailed specification of the information for which the [deliberative process] privilege is

9

claimed" along with an explanation sufficient to show why the content "properly falls within the scope of the privilege." *Landry*, 204 F.3d at 1135.

In his declaration, Mr. Rasetti divides the documents over which Treasury asserts the deliberative process privilege into four categories: (A) Draft slides and presentations and related deliberations on Chrysler and GM bankruptcy considerations; (B) Deliberations regarding substantive responses to congressional or press inquiries and prepared public statements; (C) Deliberations and materials shared with or relating to PBGC discussions; and (D) Internal deliberations regarding financing, cash flows, or other restructuring considerations related to Delphi. *See* Rasetti Decl., ECF No. 35-1 at 6-10. Nonetheless, the rationale provided to withhold the documents under these categories is inadequate.

As an initial matter, Categories A and D do not establish that Treasury "has never implemented the opinions or analyses contained in the document, incorporated them into final agency policy or programs, referred to them in a precedential fashion, or otherwise treated them as if they constitute agency protocol." *Gen. Elec. Co. v. Johnson*, No. 00-2855, 2006 WL 2616187, at *5 (D.D.C. Sept. 12, 2006). To the contrary, in many instances Mr. Rasetti notes that the documents "may have been considered in developing...the policy positions that Treasury

may have adopted." Rasetti Decl., ECF No. 35-1 at 7, 8. If
Treasury implemented the opinions or analyses contained in these
communications into its final policies, the documents would not
be protected from disclosure under the deliberative process
privilege. *Coastal States*, 617 F.2d at 866. The Court simply
lacks sufficient information to know whether or not that is the
case. Additionally, Mr. Rasetti summarily states that the
documents in Categories B, C, and D "are pre-decisional and
constitute part of the deliberative process" without offering
any support for his assessment. *See* Rasetti Decl., ECF No. 35-1
at 8-10. It is well-established that such conclusory assertions
made in an agency's declaration are insufficient to establish a
deliberative-process privilege claim. *See Ascom Hasler*, 267
F.R.D. at 6 (finding privilege log and declaration deficient
"because the assertions in the declaration [were] conclusory"
and recognizing the court's right "to deny the claim of
privilege on that ground").

Finally, the rationale Treasury offers in its *ex parte*
submission in support of its privilege assertions is also
deficient. Analogous to the Rasetti declaration, Treasury
summarily declares that many documents are predecisional and
deliberative without demonstrating that the guidance contained
therein hasn't been adopted, in whole or in part, by subsequent
policies. In other instances, Treasury attaches *ex parte* cover

11

sheets concerning the same document but asserting different privileges. For example, a cover page for Document No. 30 asserts the attorney-client and deliberative process privilege but is immediately preceded by a separate cover page, also for Document No. 30, that invokes only the attorney-client privilege. Such inconsistent treatment cannot be understood to constitute "a specific articulation of the rationale supporting the privilege." *See Ascom Hasler*, 267 F.R.D. at 4.

Treasury has had ample opportunities to provide sufficient detail to enable the Court to assess its deliberative process privilege claims, including in: (1) its privilege log, (2) the Rasetti declaration, and (3) its *ex parte* submission justifying its privilege assertions on a per-document basis. Despite receiving explicit instructions from the Court to explain "what deliberative process is involved, and the role played by the documents in issue in the course of that process," Treasury has miserably failed to do so. *See* Minute Entry of July 15, 2016. Indeed, Treasury has essentially wasted this Court's precious and limited time, notwithstanding the Court's stern warning in its Minute Order dated July 15, 2016. *Id*. ("A hint to the wise should be sufficient."). Accordingly, the Court **ORDERS** the forthwith production of all documents withheld or redacted solely under the deliberative process privilege. The documents over which Treasury has raised a deliberative process claim

along with another privilege will be analyzed after Treasury produces a revised privilege log.

### III. THE REMAINING PRIVILEGE CLAIMS

Treasury has also raised three other privileges to rationalize withholding responsive material from Respondents: the presidential communications privilege, the attorney-client privilege, and the work product doctrine. *See generally* Opp., ECF No. 35. Noting that Treasury withdrew nearly 75% of its previous privilege assertions once ordered to make an *in camera* submission, the Court is of the opinion that it will be better positioned to assess the merits of the remaining claims after Treasury has produced a revised privilege log and *in camera* submission containing only the remaining contested documents.

### IV.   CONCLUSION

For the foregoing reasons, Respondents' motion to compel the production, or alternatively *in camera* review, of the documents withheld and redacted by Treasury is **GRANTED in part**. The documents over which Treasury has asserted the deliberative process privilege in isolation shall be **FORTHWITH PRODUCED** to Respondents. Treasury shall also produce a revised privilege log to both the Court and Respondents by no later than January 10, 2017. Treasury shall submit for *in camera* review two copies of an updated binder containing only the documents in the revised privilege log by January 10, 2017. The revised submission shall

follow the same production specifications as the July 25, 2016 submission. The Court will not extend the time to comply with this order. The Court will analyze the merits of Treasury's remaining privilege assertions upon receipt of the revised submission. Treasury is again reminded of the Court's Minute Order dated July 15, 2016.

        **SO ORDERED.**

**Signed:**     **Emmet G. Sullivan**
                **United States District Judge**
                **December 20, 2016**