```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                               )
U.S. DEPARTMENT OF THE         )
TREASURY,                      )
                               )
          Petitioner,          )
                               )
     v.                        )   Case No. 12-mc-100 (EGS)
                               )
PENSION BENEFIT GUARANTY       )
CORPORATION,                   )
                               )
          Interested Party,    )
                               )
     v.                        )
                               )
DENNIS BLACK, et al.,          )
                               )
          Respondents.         )
_____)
```

**MEMORANDUM OPINION**

Pending before the Court are the U.S. Department of Treasury's contested privilege assertions that were not resolved by the Court's December 20, 2016 Opinion ordering Treasury to: (1) produce all documents over which it asserted the deliberative process privilege in isolation; and (2) submit a revised privilege log and *in camera* production. Upon consideration of Respondents' motion to compel, response and reply thereto, the relevant caselaw, the *in camera* production and the entire record, and for the reasons set forth below, the

1

unresolved portion of the motion is **GRANTED in part** and **DENIED in part**.

I.  **BACKGROUND**

Respondents in this miscellaneous action are plaintiffs in *Black v. PBGC*, Case No. 09-13616, a civil action pending in the United States District Court for the Eastern District of Michigan. Respondents are current and former salaried workers at Delphi Corporation ("Delphi"), an automotive supply company. In the civil action, Respondents allege that in July 2009, the Pension Benefit Guaranty Corporation ("PBGC") improperly terminated Delphi's pension plan for its salaried workers ("Plan") via an agreement with Delphi and General Motors. Treasury is not a party to the civil action.

On July 9, 2015, Respondents filed a motion to compel the production, or alternatively *in camera* review, of the documents Treasury withheld or redacted under four separate claims of privilege: (1) the deliberative process privilege; (2) the presidential communications privilege; (3) the attorney-client privilege; and (4) the work product doctrine. *See generally* Mot. Compel, ECF No. 30. After reviewing the withheld documents *in camera*, the Court concluded that Treasury failed to provide a specific articulation of the rationale supporting the deliberative process privilege and ordered Treasury to produce to Respondents all of the documents over which it asserted the

deliberative process in isolation. *See* Op., ECF No. 42. Noting that Treasury had withdrawn nearly 75% of its privilege assertions when first ordered to make an *in camera* submission, the Court ordered Treasury to revise its privilege log and submit an updated *in camera* production containing only the documents withheld under the presidential communications privilege, the attorney-client privilege, or the work product doctrine. The 85 documents over which Treasury asserts one of these privileges are now at issue before the Court.

## II. THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE

The purpose of the presidential communications privilege is to "guarantee the candor of presidential advisers and to provide '[a] President and those who assist him ... [with] freedom to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately.'" *In re Sealed Case*, 121 F.3d 729, 743 (D.C. Cir. 1997) (quoting *U.S. v. Nixon*, 418 U.S. 683, 708 (1974)). This privilege extends not only to communications directly involving the President, but also "to communications authored or received in response to a solicitation by members of a presidential adviser's staff, since in many instances advisers must rely on their staff to investigate and issue and formulate the advice to be given to the President." *ACLU v. Dep't of Justice*, Case No. 10-123, 2011 U.S. Dist. LEXIS 156267, *30

3

(D.D.C. Feb. 14, 2011) (citing *In re Sealed Case*, 121 F.3d at 752). "Unlike the deliberative process privilege, the presidential communications privilege covers documents in their entirety." *Loving v. Dep't of Def.*, 496 F. Supp. 2d 101, 107 (D.D.C. 2007), *aff'd sub nom*. *Loving v. Dep't of Def.*, 550 F.3d 32 (D.C. Cir. 2008).

Treasury has raised the presidential communications privilege as the basis for withholding 63 documents from production. The documents can be grouped into four categories: (1) drafts of presidential speeches;[1] (2) personal requests for information by President Obama;[2] (3) draft memoranda from staffers to Dr. Lawrence Summers, the Director of the National Economic Council, Assistant to the President for Economic Policy, and co-chair of the Presidential Task Force on the Auto Industry ("Auto Task Force");[3] and (4) electronic mail conversations among Auto Team members concerning advice to be provided to the President.[4] O'Connor Decl., ECF No. 35-3 ¶ 7. For the following reasons, the Court concludes that while these documents are covered by the presidential communications

---

[1] *See* Document Nos. 612 and 778.
[2] *See* Document No. 764.
[3] *See* Document Nos. 67, 72, 84, 94, 275, 560, 593, 596, 599, 601, 603, 605, 611, 623, 627, 629, 631, 633, 638, 668, 670, 672, 674, 676, 692, 758, 759, 760, 761, 762, 766, 770, 777, 849, 856, 859, 860, 863, 944, 948, 950, 956, 1006, 1089, 1091, 1094, 1152, 1166, 1168, 1217, 1219, 1221, and 1223.
[4] *See* Document Nos. 358, 610, 621, 763, 765, 767, and 776.

privilege, Respondents have demonstrated a need sufficient to overcome the privilege.

The Court can swiftly resolve the first two categories of documents. With regard to the draft presidential speeches, Respondents, in their reply brief, "concede that these two documents are covered by the privilege" because they "would have been seen by the President[.]" Reply, ECF No. 36 at 18. By the same token, the draft letter containing a handwritten request from President Obama to consult Dr. Summers regarding the Delphi salaried pension plan is also covered by the presidential communications privilege.[5] *See Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1114 (D.C. Cir. 2004) (recognizing that "communications directly involving and documents actually viewed by the President" are privileged).

The vast bulk of the documents withheld from production under the presidential communications privilege — *i.e.*, 53 of the remaining 60 documents — fall into the third category. To justify withholding these draft memoranda from production, Treasury submitted a declaration from Jennifer M. O'Connor, the Deputy Counsel to the President. *See* O'Connor Decl., ECF No. 35-3. Ms. O'Connor's responsibilities in the White House Counsel's Office include providing legal advice to White House staff,

---

[5] *See* Document No. 764.

including on matters involving the invocation of the presidential communications privilege. *Id*. ¶ 1. Ms. O'Connor represents that all of the withheld documents "relate to the President's decisions as to how the United States should address the financial distress of several of its large automobile corporations and protect the country from the potential consequences of their bankruptcy." *Id*. ¶ 7. Ms. O'Connor also sheds light on the relationship between the Auto Task Force, Dr. Lawrence Summers, and the President. During the time of the challenged communications, Dr. Summers served as co-chair of the Auto Task Force, the Director of the National Economic Council, and Assistant to the President for Economic Policy. *Id*. ¶ 8. In this role, Dr. Summers led the President's daily economic briefing and advised the President on decisions relating to the United States' actions in response to the bankruptcy and restructuring of major automotive companies, including General Motors. *Id*. ¶ 9. A team of federal employees (the "Auto Team") supported Dr. Summers and the Auto Task Force. *Id*. ¶ 8.

In *In re Sealed Case*, the Court of Appeals, determined that "communications made by presidential advisers in the course of preparing advice for the President come under the presidential communications privilege, even when these communications are not made directly to the President." *In re Sealed Case*, 121 F.3d at 752. In defining the scope of the privilege, the Court reasoned

that "[g]iven the need to provide sufficient elbow room for advisers to obtain information from all knowledgeable sources, the privilege must apply both to communications which these advisers solicited and received from others as well as those they authored themselves." *Id*.

Here, the draft memoranda from Auto Team members to Dr. Summers concerning the Auto Task Force's duties are clearly protected by the presidential communications privilege. Respondents do not seem to dispute that Dr. Summers, the co-Chair of the Auto Task Force and Assistant to the President for Economic Policy, qualifies as a presidential adviser for purposes of the privilege. *See* Reply, ECF No. 36 at 18-19. Not only did President Obama select Dr. Summers to helm the Auto Task Force, a group formed to review viability plans submitted by major automotive manufacturers, but Dr. Summers also advised the President on economic issues on a daily basis.[6] O'Connor Decl., ECF No. 35-3 ¶ 9. The privilege that would attach to communications between Dr. Summers and the President also extends to communications between Dr. Summers and his staff members who have responsibility for formulating the advice to be given the President concerning the government's bankruptcy and

---

[6] To the extent that Dr. Summers' title leaves any room for doubt as to his position as a presidential advisor, President Obama, in a handwritten note on a letter regarding the Delphi pension plan, specifically requested that Dr. Summers be consulted on the matter at issue. *See* Document No. 764.

restructuring efforts. *See In re Sealed Case*, 121 F.3d at 752. Each draft memoranda that Treasury has withheld from production is authored by the Auto Team, addressed specifically to Dr. Summers, and concerns the Auto Team's efforts to provide the Auto Task Force and the President with sufficient information to achieve the government's automotive restructuring objectives.

Respondents contend that the presidential communications privilege should not apply because Treasury has not shown that the challenged documents were *solicited* by Dr. Summers, rather than merely received by him. *See* Reply, ECF No. 36 at 19. According to Respondents, "if everything a presidential advisor or his staff received was automatically covered by the privilege, vast swaths of government communications could be hidden from public view merely by regularly copying such people on emails." *Id*. While Respondents are correct that the presidential communications privilege applies only to documents that are "solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President[,]" *In re Sealed Case*, 121 F.3d at 752, Respondents' argument is unpersuasive for two reasons. First, the White House Counsel's Office expressly represented that the disputed materials "were authored by or solicited and received by the President or senior presidential advisors and

staff, including Lawrence H. Summers." O'Connor Decl., ECF No. 35-3 ¶ 8. Second, upon examination of the challenged documents *in camera*, it is apparent from the faces of the memoranda that they were in fact solicited by Dr. Summers. For instance, the Auto Team prefaced many draft memoranda with a note that the included information was being provided "as requested" or "as discussed" in a recent meeting with Dr. Summers. The content of the withheld material also suggests that the drafters of the memoranda met frequently with Dr. Summers to inform him of research results, discuss strategy, and formulate advice to the President. As a result, the Court is satisfied that the draft memoranda were solicited rather than merely received by Dr. Summers. *See also In re Sealed Case*, 121 F.3d at 758 (remarking that a "review of the [challenged] documents themselves demonstrates that from the nature of their contents and the persons to whom they were directed there can be little question that they had been solicited").

For the same reasons, the seven documents in the fourth category — *i.e.*, emails among Auto Team members regarding the formulation of advice to the President — are covered by the presidential communications privilege. Although, Dr. Summers may not be present on some of these communications, it is apparent from the documents' content that the Auto Team members were responding to requests for information by Dr. Summers or the

9

President. In these communications, Auto Team members discussed the preparation of memoranda to the President and harmonized edits to be presented to Dr. Summers. Because the presidential communications privilege extends "to communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate[,]" these documents are privileged. *Id.* at 752.

Although the Court has established that the documents in all four categories are covered by the presidential communications privilege, the Court's inquiry is not complete. The presidential communications privilege "is qualified, not absolute, and can be overcome by an adequate showing of need." *Id.* at 745. To overcome the privilege, Respondents must demonstrate two elements: (1) that the subpoenaed material likely contains evidence "directly relevant to issues that are expected to be central to the trial[;]" and (2) that the evidence "is not available with due diligence elsewhere." *Id.* at 754. Here, Respondents have satisfied both prongs. First, Respondents assert that they need the withheld material because it may show pressure exerted by Treasury or the White House to terminate the Delphi Plan for impermissible or political

10

reasons, an issue at the core of the parties' dispute in the Michigan case. Mot. Compel, ECF No. 30 at 32. In that case, Respondents allege that the PBGC's termination of the Delphi Plan was not justified by the applicable statute but instead the result of undue pressure imposed by Treasury and the Auto Task Force. *Id.* at 4. Rather than substantively engage in the needs analysis or attempt to distinguish the cases upon which Respondents rely, Treasury argues unconvincingly that Respondents' rationale for the material is "nothing but rank speculation." Opp'n, ECF No. 35 at 24. Nonetheless, for substantially the same reasons advanced by Respondents, the Court is persuaded that Respondents have made "at least a preliminary showing of necessity for information that is not merely demonstrably relevant but indeed substantially material to their case." *Dellums v. Powell*, 561 F.2d 242, 249 (D.C. Cir. 1977). Second, Respondents represent that the materials are unavailable through any other means, *see* Mot. Compel, ECF No. 30 at 32, and Treasury does not challenge this assertion in its opposition motion. *See* Opp'n, ECF No. 35 at 24. Accordingly, the Court finds that Respondents have demonstrated a need sufficient to overcome the presidential communications privilege.

## III. THE ATTORNEY-CLIENT PRIVILEGE

Treasury has withheld or redacted 15 documents under the attorney-client privilege.[7] "The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998). The purpose of the privilege is to protect a client's confidences to his or her attorney, thereby encouraging an open and honest relationship between the client and the attorney. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). The privilege is "narrowly construed and is limited to those situations in which its purposes will be served." *Id.* Hence, the privilege "protects only those disclosures necessary to obtain informed legal advice which may not have been made absent the privilege." *Id.* (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The privilege protects communications between the attorney and the client, but does not shield the underlying facts contained in those conversations from disclosure. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).

As a threshold matter, six of the challenged documents concern communications between Auto Team members and attorneys

---

[7] *See* Document Nos. 30, 207, 210, 446, 499, 558, 570, 679, 685, 720, 789, 792, 1071, 1113, and 1204.

12

at Cadwalader, Wickersham, and Taft LLP ("Cadwalader"), one of the law firms that served as outside counsel to the Auto Team.[8] Because Respondents have indicated that they "do not dispute the Treasury's invocation of attorney-client privilege for those communications [with Cadwalader attorneys]," Mot. Compel, ECF No. 30 at 33, the Court will not order the production of these documents.

With regard to the remaining nine documents, each one concerns a communication between Auto Team members and Matthew Feldman, an Auto Team member who is also an attorney.[9] Respondents argue that these communications are not privileged because Mr. Feldman, while an attorney, provided both legal and non-legal advice to the Auto Team. *Id*. at 35. Respondents admit, however, that "Treasury can invoke the attorney-client privilege only for those communications of Mr. Feldman which were primarily legal in nature[.]" *Id*. at 35-36. After reviewing these documents *in camera*, the Court is satisfied that Mr. Feldman acted in his legal capacity in each communication. In some cases, Auto Team members asked Mr. Feldman a legal question – *e.g.*, the potential liability surrounding specific Auto Team proposals – and Mr. Feldman provided his legal opinion. In other instances, Mr. Feldman requested information from Treasury

---

[8] *See* Document Nos. 685, 720, 792, 1071, 1113, and 1204.
[9] *See* Document Nos. 30, 207, 210, 446, 499, 558, 570, 679, and 789.

employees to aid the preparation of Treasury's response to congressional inquiries. Nothing in these communications suggests that their confidential nature was compromised or that the privilege was waived. As a result, the Court concludes that Treasury correctly withheld these 15 documents from production under the attorney-client privilege.

**IV. ATTORNEY WORK PRODUCT DOCTRINE**

Treasury has raised the attorney work product doctrine over seven documents.[10] The work product doctrine "protects written materials lawyers prepare 'in anticipation of litigation.'" *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting Fed. R. Civ. P. 26(b)(3)). In assessing whether the proponent has carried its burden to show a document is protected as work product, the relevant inquiry is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared ... because of the prospect of litigation." *EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999). Although an agency need not have a specific claim in mind when preparing the documents, there must exist some articulable claim that is likely to lead to litigation in order to qualify the documents as attorney work product. *Coastal States Gas Corp.*,

---

[10] *See* Document Nos. 203, 792, 983, 985, 987, 989, and 1259.

617 F.2d at 865; *Am. Immigration Council v. Dep't of Homeland Security*, 905 F. Supp. 2d 206, 221 (D.D.C. 2012) (work product encompasses documents prepared for litigation that is "foreseeable," if not necessarily imminent; "documents that ... advise the agency of the types of legal challenges likely to be mounted to a proposed program, potential defenses available to the agency, and the likely outcome," are covered).

Here, there can be little doubt that the material Treasury has withheld under the work product doctrine is protected from disclosure. Four of the seven documents at issue are draft memoranda authored by Cadwalader attorneys.[11] The remaining three documents are draft letters prepared by Department of Justice attorneys.[12] It is apparent from the face of each of the challenged documents that they were prepared by counsel in anticipation of the Chrysler and General Motors bankruptcy proceedings – *i.e.*, in anticipation of litigation. Among other things, the documents outline potential legal approaches to disposing of corporate assets, discuss proposed amendments to loan agreements, and detail objectives for pending mediation proceedings. Further, these materials constitute opinion work product, rather than fact work product, because they reveal "the mental impressions, conclusions, opinions, or legal theories of

---

[11] *See* Document Nos. 203, 792, 983, and 1259.
[12] *See* Document Nos. 985, 987, and 989.

a party's attorney" concerning potential litigation. *F.T.C. v. Boehringer Ingelheim Pharm.*, Inc., 778 F.3d 142, 151 (D.C. Cir. 2015).

Nonetheless, as with the presidential communications privilege, the work product doctrine is not an absolute privilege. Disclosure may be warranted if the party seeking the privileged material can make a showing of substantial need and an inability to obtain the equivalent without undue hardship. *See Upjohn*, 449 U.S. at 400. Respondents, however, have not articulated a specific need for these documents. Whereas Respondents claim that they need the materials protected under the presidential communications privilege because those documents may reveal undue pressure exerted by the White House or Treasury over the decision to cancel the Delphi Plan, Respondents make no similar claim as to these seven documents. Respondents simply have not made "the extraordinary showing of necessity" required to obtain access to opinion work product. *In re Sealed Case*, 676 F.2d 793, 811 (D.C. Cir. 1982). Accordingly, the Court will not order the production of the documents withheld under the work product doctrine.

## V. RELEVANCE

Treasury has withheld one document from production on grounds of relevance.[13] The document consists of a weekly report from Treasury to the White House and an email circulating the report among Treasury personnel. Because Respondents have not challenged Treasury's relevance assertion, the Court will not order the production of this document.

## VI. CONCLUSION

For the foregoing reasons, the unresolved portion of Respondents' motion to compel the production, or alternatively *in camera* review, of the documents withheld and redacted by Treasury is **GRANTED in part** and **DENIED in part**. The 63 documents over which Treasury has asserted the presidential communications privilege shall be **FORTHWITH PRODUCED** to Respondents. The documents over which Treasury has asserted a claim of relevance, attorney-client privilege or work product are protected from production. An appropriate Order accompanies this Memorandum Opinion, filed this same day.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **April 13, 2017**

---

[13] *See* Document No. 619.